UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NORMAN MOLATCH,

                        Plaintiff,

-against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-----------------------------------------------------------------X

MEMORANDUM & ORDER
CV-04-2108 (NGG)

GARAUFIS, District Judge.

Norman Molatch (the "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g). The Plaintiff challenges the determination by the Commissioner of Social Security Jo Anne B. Barnhart ("Commissioner"), denying his Social Security disability benefits pursuant to 42 U.S.C. §§ 416(i) and 423, respectively. For the reasons set forth below, the Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED to the Commissioner for further proceedings.

**I.  BACKGROUND**

    **A.  Procedural History**

The Plaintiff filed an application for Social Security Disability Insurance Benefits on August 25, 1999 alleging that he was disabled since June 18, 1998 due to glaucoma, chronic fatigue, skin cancer and pulmonary and liver diseases. (Transcript of the Record ("Tr.") at 33-35.) The Plaintiff's application for Title II benefits was denied on December 27, 1999 by the

Social Security Administration. (Tr. 24.) Upon request for reconsideration, the Social Security Administration again denied the Plaintiff's application on March 27, 2000. (Tr. 29.) On November 8, 2000, the Plaintiff then appeared before Administrative Law Judge ("ALJ") Newton Greenberg. (Tr. 135-46.) Following a hearing, ALJ Greenberg denied the Plaintiff's request for benefits on November 30, 2000. (Tr. 9-17). The Social Security Administration Appeals Council denied the Plaintiff's request for review on April 30, 2004. (Tr. 4.) The Plaintiff then timely commenced this action.

      B.      **The Plaintiff's Personal and Employment History**

The Plaintiff was born on March 16, 1946. (Tr. 33.) At the time of the hearing and decision before ALJ Greenberg, the Plaintiff was fifty-four years old. The Plaintiff testified that he attended school for 12 years but did not graduate. (Tr. 135.) The Plaintiff worked as a self-employed roofer from 1964 to June 1998. (Tr. 59.) The Plaintiff estimated that his job required him to frequently lift twenty five pounds or more and occasionally lift one hundred pounds or more. (Tr. 60.) His job also required him to walk six hours a day and stand for two hours a day. (Id.)

      C.      **The Plaintiff's Medical History**

Dr. John Lombardo, an ophthalmologist, examined the Plaintiff on September 23, 1999 and March 22, 2000. (Tr. 84-88, 92-96.) Dr. Lombardo noted that the Plaintiff was suffering from some loss of vision. (Tr. 86.) The Plaintiff was treated, and the Plaintiff's vision with correction was diagnosed as 20/20 in both eyes. (Tr. 86.)

The Plaintiff was examined by Dr. Ronald Brancaccio on March 31, 1999. (Tr. 81.) Dr. Brancaccio noted that the Plaintiff was treated for a squamous cell carcinoma of the right arm.

(Id.) Two skin cancer lesions were excised. (Tr. 83.) The Plaintiff was to follow up in one year. (Tr. 81.)

On September 21, 1999, an MRI examination of the right elbow was attempted but could not be completed due to the Plaintiff's claustrophobia. (Tr. 99.) Dr. Kevin Math noted that the incomplete scan showed evidence of moderate degenerative joint disease at the elbow joint. (Tr. 104.) The scan also showed a questionable 1.5 cm loose body at the posterior aspect of the elbow. (Id.)

An MRI of the lumbar spine was taken on September 29, 1999. (Tr. 100.) Dr. Barbara Zeifer's impressions were of severe spinal stenosis at L3-4 due to a prominent posterior disc bulge, moderate central canal compromise at L4-5 due to a posterior disc bulge, mild canal compromise at L2-3 due to a mild diffuse disc bulge, mild canal compromise at L5-S1 due to a small-to-moderate posterior disc bulge, and left foraminal compromise at L2-3 and bilateral foraminal compromise at L5-S1, mild in severity. (Tr. 103.)

Dr. Steven Sclafani examined the Plaintiff on October 6, 1999. (Tr. 101.) On physical examination, the Plaintiff's right elbow showed signs of some enlargement and palpable osteophytes. (Id.) Dr. Sclafani noted a range of motion from 30 degrees to 120 degrees of flexion. (Id.) X-rays of the right elbow showed severe degenerative arthritis with osteophyte formation in the anterior and posterior compartments of the elbow. (Id.) There appeared to be a loose body within the olecranon fossa and within the posterior compartment of the elbow as well. (Id.) Dr. Sclafani also reported that examination of the lumbar spine revealed some restricted motion. (Id.)

The Plaintiff was seen by Dr. Soo Park on October 26, 1999. (Tr. 105.) Dr. Park

confirmed that the Plaintiff suffered from moderate limitations in lifting, bending, walking, standing, pushing, pulling, and arm controls. (Tr. 108.) Dr. Park noted that the Plaintiff had a history of asthma, skin cancer, glaucoma in both eyes, bony spur in the right elbow with a normal range of motion, back pain with herniated disc, and of elevated liver enzymes. (Tr. 107.) After examination, Dr. Park reported that the Plaintiff's gait and station were normal and that the lumbar spine ventriflexion was to 70 degrees, the dorsiflexion to 20 degrees, and the lateral flexion to 30 degrees. (Tr. 106-07.) The Plaintiff had a full range of motion with respect to his cervical spine. (Tr. 107.) The straight leg raise test was 70 degrees bilaterally. (Id.) Dr. Park also noted that the Plaintiff's lungs were clear to percussion and that no rales, rhonchi, or wheezing was found. (Id.) A pulmonary function test showed a normal forced vital capacity (FVC) and mildly reduced forced expiratory (FeV1) ratio. (Id.) The Plaintiff also demonstrated normal muscle strength. (Id.)

Dr. Gerard Lombardo examined the Plaintiff on November 4, 1999. (Tr. 115-18.) He noted that the Plaintiff's diagnoses were spinal stenosis and asthma. (Tr. 115.) Dr. Lombardo reported that the Plaintiff had an average of three acute asthma episodes in the past year. (Tr. 116.) He noted that the Plaintiff wheezed on occasion and suffered from back pains. (Tr. 117.) Dr. Lombardo opined that the Plaintiff could not lift and was limited with regards to walking, sitting, and pushing or pulling. (Tr. 117-18.)

On December 7, 1999, Dr. Sury Putcha, a state agency review physician, reviewed the record and offered an assessment of the Plaintiff's functional capacity. (Tr. 119-25.) He opined that the Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk for about 6 hours a day, and sit about 6 hours a day. (Tr. 120.) He also noted that

4

the Plaintiff did not suffer any limitations in pushing or pulling. (Id.) Dr. J.B. Jasmin, another state agency physician, reviewed the record and agreed with Dr. Putcha's assessments on March 27, 2000. (Tr. 125.)

On March 10, 2000, Dr. Antonio De Leon examined the Plaintiff. (Tr. 128-31.) The Plaintiff had clear lungs and was not wheezing. (Tr. 129.) There was no prolongation of the expiratory phase. (Id.) Dr. De Leon reported no intercostal retraction and no chest wall deformity. (Id.) He noted that the Plaintiff was able to bend forward to 60 degrees and was able to get onto the examination table with no difficulty. (Id.) The Plaintiff experienced some difficulty squatting. (Id.) Examination of the right elbow revealed flexion extension was to 130 degrees, supination to 60 degrees, and pronation to 60 degrees. (Id.) The Plaintiff had scoliosis. (Id.) Dr. De Leon noted no back tenderness or muscle spasm. (Id.) A lumbar spine x-ray revealed severe arthritic changes and spondylolysis at L5. (Id.) Dr. De Leon's impressions were of back pains, pains involving the elbow with loose bodies, history of bronchial asthma, glaucoma, and abnormal liver function. (Tr. 129-30.) Dr. De Leon opined that the Plaintiff's ability to sit was not limited, but that the Plaintiff's abilities to walk and stand were mildly limited due to back pains and shortness of breath. (Tr. 130.) The Plaintiff's abilities to carry and lift were mildly limited because of back pains, shortness of breath, and elbow pains. (Id.)

### D.     Non-Medical Evidence

The Plaintiff reported that he is able to do light household chores and light exercise. (Tr. 64.) He shares housework with his wife. (Id.) The Plaintiff also stated that he has no problem driving. (Tr. 63.) The Plaintiff periodically takes a drive or walks to the park to pass the time. (Tr. 137-38.) The Plaintiff testified that he does not have a problem walking but cannot stay

5

immobile in one spot for a long period of time. (Tr. 140.)

## II. DISCUSSION

### A. Standard of Review

The role of a district court in reviewing the Commissioner's final decision is limited. If supported by "substantial evidence," the findings of the Commissioner as to any fact shall be conclusive. Richardson v. Perales, 402 U.S. 389, 390 (1971). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401 (internal citations omitted). "It is the function of the [Commissioner], not [the reviewing courts] to resolve evidentiary conflicts and to appraise the credibility of witnesses . . . ." Aponte v. Secretary, Department of Health & Human Services, 728 F.2d 588, 591 (2d Cir. 1984) (internal citation and quotation marks omitted).

### B. The ALJ's Decision

The Commissioner must utilize a five-step sequential analysis to determine whether an individual is entitled to disability benefits:

> First, the Commissioner determines whether the individual is doing substantial gainful work. 20 C.F.R. § 404.1520(b). If [he] is not, the Commissioner then determines whether [he] has a severe impairment that limits [his] ability to do work-related activities. 20 C.F.R. § 404.1520(c). If such impairment exists, the Commissioner then considers medical evidence to determine if the impairment meets or equals the criteria of an impairment listed in Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P. (the "Listings of Impairments"). 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment, the Commissioner proceeds to the fourth step and analyzes whether the impairment prevents the individual from doing [his] past work. 20 C.F.R. § 404.1520(e). Finally, if an individual cannot perform [his] past work, the Commissioner determines whether [his] impairment prevents [him] from doing any other work. 20 C.F.R. § 404.1520(f). If so, the Commissioner finds the individual disabled.

Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 1999). The claimant bears the burden of proof on the

first four steps; if he or she succeeds, then the Commissioner bears the burden of proof on the fifth step. See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

The Commissioner may meet this burden and show that a claimant can perform other work that exists in the national economy through the use of the Social Security Administration's ("SSA") Medical-Vocational guidelines tables ("Grid"). The Grid "provide[s] predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill." Davis v. Shalala, 883 F.Supp. 828, 832 (E.D.N.Y. 1995).

SSA regulations divide claimants into three different age categories. 20 C.F.R. § 404.1563. A claimant under the age of 50 is characterized as a "younger person" and is generally not considered handicapped with regards to adapting to a new work situation. Id. A person who is 50 to 54 years old is considered a person "approaching advanced age" whose age, along with a severe impairment and limited work experience, may seriously affect his or her ability to adjust to a new job. Id. A person over the age of 55 is considered to be of "advanced age" and if seriously impaired, has no transferable skills, and can only do light or sedentary work, is considered disabled. Id. "The advanced age category reflects the point at which age can be expected to be an adverse consideration in determining a claimant's vocational adaptability to a new and different type of work." Hill v. Sullivan, 769 F.Supp. 467, 470 (W.D.N.Y. 1991). However, the age categories are not applied mechanically in a borderline situation. 20 C.F.R. § 404.1563. A borderline situation exists when there would be a shift in results caused by the passage of a few days or months. See 20 C.F.R. § 404.1563(b).

In the instant case, the ALJ found at Step One of the sequential analysis that the Plaintiff

had not engaged in substantial gainful activity since June 18, 1998. (Tr. 16.) He found at Step Two that the Plaintiff's musculoskeletal impairments were "severe" but that the glaucoma, skin cancer, and pulmonary and liver diseases were not severe impairments. (Tr. 13-14.) At Step Three, the ALJ noted that the Plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.[1] (Tr. 16-17.) The ALJ concluded at Step Four of the analysis that the Plaintiff was unable to return to his past work. (Tr. 17.) He found that the Plaintiff had the residual functional capacity to perform the full range of light work and was able to sit, stand or walk for up to six hours in an eight hour workday, and lift, carry, push or pull objects weighing up to 10 pounds frequently or 20 pounds occasionally.[2] (Tr. 17.) Although the ALJ held that the Plaintiff did not have transferable work skills, at Step Five he found that based on the Plaintiff's exertional capacity for light work, age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rule 202.14. (Id.) The ALJ categorized the Plaintiff as an "individual closely approaching advanced age" but did not consider whether the Plaintiff should have been moved into the advanced age category given that he was approximately three and a half months away from turning fifty-five. (Id.)

---

[1] The ALJ noted that many of the impairments alleged by the Plaintiff had been treated or corrected. (Tr. 13-14.) He therefore concluded that "the only impairments causing significant functional limitations are his low back disorder and his right elbow problems." (Tr. 14.)

[2] The ALJ defined light work as "work that may require lifting/carrying or pushing/pulling objects weighing up to 20 pounds occasionally or 10 pounds frequently. Jobs are also rated as light work if they require walking or standing to a significant degree, even if there is negligible lifting required. Additionally, light work includes jobs that involve sitting most of the time and pushing and/or pulling arm or leg controls. The ability to perform light work also includes the ability to perform the less physically demanding sedentary work, which is work performed in a seated position requiring no more than occasional standing or walking and requiring no carrying of objects weighing more than ten pounds." (Tr. 15.)

### C. The ALJ's Finding that the Plaintiff can Perform Light Work is Supported by Substantial Evidence

The Plaintiff contends that the adverse disability finding of the ALJ is not supported by substantial evidence. However, a review of the record as a whole indicates that the ALJ properly found that the Plaintiff was not disabled and that substantial evidence supports the ALJ's decision.

The ALJ correctly held that the Plaintiff's glaucoma, skin cancer, and pulmonary and liver diseases did not present severe impairments. (Tr. 14.) The Plaintiff received treatment for his glaucoma and with correction now has 20/20 vision. (Tr. 13, 86.) Dr. Brancaccio noted that the Plaintiff was treated for squamous cell carcinoma of the right arm and that two skin cancer lesions were successfully excised. (Tr. 81, 83.) Although Dr. Park reported after an October 26, 1999 examination that the Plaintiff had a history of elevated liver enzymes, which the Plaintiff testified to during the hearing, there is no objective evidence in the record suggesting that the Plaintiff suffers from any liver disease. (Tr. 107, 141.)

Dr. Gerard Lombardo, the Plaintiff's treating physician, examined the Plaintiff on November 4, 1999 and reported that the Plaintiff had an average of three acute asthma episodes in the past year. (Tr. 116-17.) He noted that the Plaintiff wheezed on occasion and diagnosed the Plaintiff with asthma. (Tr. 115.) Although as a treating physician, Dr. Lombardo's diagnosis of asthma is to be given controlling weight, his opinion is contradicted by other substantial record evidence. See Shaw, 221 F.3d at 134 (controlling weight is generally given to a treating source's opinion unless it is inconsistent with other substantial evidence in the record). On March 10, 2000, Dr. Antonio De Leon examined the Plaintiff and noted that he had clear lungs, that he was not wheezing, and that there was no prolongation of the expiratory phase. (Tr. 128-

31.) Dr. De Leon reported no intercostal retraction and no chest wall deformity. (Id.) Similarly, Dr. Park also noted that the Plaintiff's lungs were clear to percussion and found no rales, rhonchi, or wheezing. (Tr. 107.) A pulmonary function test conducted by Dr. Park showed a normal forced vital capacity and mildly reduced forced expiratory ratio. (Id.)

The ALJ therefore correctly concluded that the Plaintiff was only functionally limited by his low back disorder and right elbow problems. (Tr. 14.) Although Dr. Lombardo opined that the Plaintiff could not lift and was limited with regards to walking, sitting, and pushing or pulling, the severity of Dr. Lombardo's diagnoses is also contradicted by other substantial evidence in the record. (Tr. 117-18.) Both Dr. Sclafani and Dr. Park confirmed that the Plaintiff suffered some restricted motion in the lumbar spine and suffered from severe degenerative arthritis in his right elbow, but Dr. Park noted that the Plaintiff had only moderate limitations in lifting, bending, walking, standing, pushing, pulling, and arm controls. (Tr. 101, 108.) After a March 10, 2000 examination, Dr. De Leon opined that the Plaintiff's ability to sit was not limited, but that the Plaintiff's abilities to walk and stand were mildly limited due to back pain and shortness of breath. (Tr. 130.) He found that the Plaintiff's abilities to carry and lift were also only mildly limited. (Id.) Lastly, on December 7, 1999, Dr. Sury Putcha, a state agency review physician, reviewed the record and opined that the Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk for about 6 hours a day, and sit for about 6 hours a day. (Tr. 120.) Dr. Putcha also noted that the Plaintiff did not suffer any limitations in pushing or pulling. (Id.) Although no examination was conducted, Dr. J.B. Jasmin, another state agency physician, reviewed the record and agreed with Dr. Putcha's assessments on March 27, 2000. (Tr. 125.)

10

As the numerous doctors' assessments in the record constitute substantial evidence supporting the ALJ's determination, the ALJ's finding that the Plaintiff had the capacity to perform light work must be upheld.

**D.      The ALJ Erred in Not Considering the Plaintiff's Borderline Age**

At the time of the ALJ's decision dated November 30, 2000, the Plaintiff was approximately three and a half months short of turning fifty-five. See Varley v. Secretary of Health & Human Services, 820 F.2d 777, 780 (6th Cir. 1987) ("[T]he claimant's age as of the time of the decision governs in applying the regulations.").[3] The Plaintiff asserts that the ALJ was obligated to at least "broach the possibility of a finding of disability effective with the date of his decision, November 30, 2000 - a scant 3 months before the [P]laintiff's 55th birthday." (Plaintiff's Memorandum of Law at 5.)  There is nothing in the ALJ's decision indicating that the ALJ evaluated whether the Plaintiff should have been moved into the "advanced age" category which would have rendered him qualified for disability under the Grid.[4]

20 C.F.R. § 404.1563(b) states: "[The SSA] will not apply the age categories mechanically in a borderline situation.  If [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination

---

[3] In the case of an applicant whose insured status ran out before the date of adjudication, the proper age cut-off date is the "last day of insured status." See Social Security Ruling 83-10, 1983 WL 31251, at *8 (S.S.A.).  Here, however, the ALJ noted that the Plaintiff met the disability insured status through June 30, 2003, (Tr. 13), thus making the date of the ALJ's decision on November 30, 2000 the proper date from which to determine the Plaintiff's age category.

[4] The ALJ's decision merely states: "Born on March 16, 1946, the claimant is currently 54 years old.  This is defined in the regulations as an individual closely approaching advanced age (20 C.F.R. § 404.1563)." (Tr. 16.)  There is no further discussion in the record concerning the Plaintiff's appropriate age category.

11

or decision that [the claimant is] disabled, [the SSA] *will* consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b) (emphasis added). In order to constitute a borderline situation, the claimant's age must fall within the accepted borderline range and the proximity to the older age category must affect the ultimate outcome. See Smith v. Barnhart, No. 00-C-2643, 2002 WL 126107, at *3 (N.D. Ill. Jan 31, 2002). Although placement into the older age category is not mandatory,[5] the ALJ must at least address the issue if the Plaintiff falls within a borderline age category. See Daniels, 154 F.3d at 1133-34; see also France v. Apfel, 87 F.Supp.2d 484, 492 (D. Md. 2000) (remanding for reevaluation of the claimant's residual work ability where the ALJ failed to sufficiently address the affect of the claimant's age on her placement in the grid as the claimant was 5 months away from turning fifty-five); Freundt v. Massanari, No. 00-C-4456, 2001 WL 1356146, at *20 (N.D. Ill. Nov. 2, 2001) (remanding for analysis of borderline age issue and requiring explanation of age category determination).

Here, the Plaintiff was within a few months of turning fifty-five which would place him in the advanced age category. See Russell v. Comm'r of Soc. Sec., 20 F.Supp.2d 1133, 1134-35 (W.D. Mich. 1998) (noting that Appeals Council Interpretation II-5-302 suggests that "there is a six month window in which a claimant's situation is 'borderline'"). See also Hill, 769 F.Supp. at 471 (three months, two days within the borderline); Davis, 883 F.Supp. at 838 (three months within the borderline); Leyba v. Chater, 983 F.Supp. 1048, 1051 (D. N.M. 1996) (three and a half

---

[5] See Daniels v. Apfel, 154 F.3d 1129, 11336 (10th Cir. 1998) ("The Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids.")

months within the borderline). But see Crady v. Secretary of Health & Human Services, 835 F.2d 617, 618-19, 622 (6th Cir. 1987) (one month not deemed borderline). If the ALJ had evaluated the Plaintiff as being of advanced age, the Grid under Rule 202.06 directs a finding of disability because, as the ALJ noted, the Plaintiff was only capable of light or sedentary work, had a high school education,[6] and had no transferable skills. (Tr. 17.) Because the Plaintiff was of advanced age and using the older category would result in a determination that the Plaintiff was disabled, 20 C.F.R. § 404.1563(b) requires the ALJ to at least consider whether the Plaintiff should have been evaluated as a person of advanced age, rather than a person closely approaching advanced age.[7]

## III. CONCLUSION

For the reasons set forth above, the Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED to the Commissioner to expressly consider

---

[6] Although the ALJ found that the Plaintiff had a high school education, Rule 202.00(c) states that "[o]rdinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education." See Medical-Vocational Rule 202.00(c). Here, as the Plaintiff's occupational experience as a roofer does not reflect such use and as he never graduated high school, he should be evaluated under Rule 202.06 as a claimant whose education "does not provide for direct entry into skilled work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, § 202.06.

[7] The Plaintiff additionally asserts that the Appeals Council incorrectly failed to acknowledge the Plaintiff's post-hearing change to advanced age and therefore judgment should be entered on his behalf. However, the date of the ALJ's decision "is the relevant cut-off point for determination of all factors on which the determination of disability vel non is based, including the claimant's age." Barrett v. Apfel, 40 F.Supp.2d 31, 38 (D. Mass. 1999) (rejecting the plaintiff's assertion that the court should enter judgment on his behalf as a matter of law, simply because he entered into advanced age during the course of his appeal). Indeed, if the date of the ALJ's decision did not control, "courts constantly would be remanding decisions as individuals aged through the appellate process." Id. at 38.

whether the Plaintiff should have been evaluated in the "advanced age" category at the time of the ALJ's decision.

SO ORDERED.

Dated: July 20, 2005
   Brooklyn, N.Y.
                /s/ Nicholas G. Garaufis
                Nicholas G. Garaufis
                United States District Judge